am William Hill. I represent the appellant Royal Caribbean. Royal Caribbean appeals the denial of its claim arising out of BP's Deepwater Horizon oil spill. The panel is well familiar with the facts underlying this case. BP's oil spill caused the tragic death of 11 people and poured more than 200 million gallons of oil into the waters of the Gulf, causing an environmental disaster, which in turn caused financial damages to individuals and companies like Royal Caribbean doing business in the Gulf region. Unlike some claimants that this Court, in particular Judge Clement, have raised concerns about, where claimants have attempted to achieve class status and get compensation, even though their businesses were located hundreds of miles from the Gulf waters, Royal Caribbean, in its business, was in the Gulf waters and its ships moved through the Gulf and into Gulf Coast area ports. Royal Caribbean was directly affected when its passengers failed to buy tickets, depending on the beauty of the Gulf Coast waters. Royal Caribbean is in the business the settlement agreement was intended to compensate. Indeed, the cruise industry, like Royal Caribbean, brings large amounts of tourist dollars into the region through its passengers coming through Gulf Coast ports. I will concentrate my argument today on the main contractual issue, the appeal panel's misconstruing the settlement agreement by applying Section 1.2.3 as the settlement agreement. Royal Caribbean's cruise ships are, in essence, city-sized floating resorts that include restaurants, which are eating facilities, hotels, which are lodging facilities, shopping malls, which are shopping facilities, as well as entertainment facilities, exercise facilities, and even medical facilities. And yet, the appeal panel refused to consider Royal Caribbean as a facility for purposes of eligibility under the settlement agreement. What are you claiming to be, a vessel or a service business? Both, Your Honor. We meet the... That doesn't really work, I don't think. Your Honor, under the definitions as, or under the criteria as provided, we do believe we can be both a vessel and a service business. Indeed, BP even admits in its brief that a business could be considered both a facility and a service business, but it's only the vessel that they would lead to that conclusion that a vessel is an exclusive criteria. Indeed, BP's argument turns the settlement agreement on its head. The settlement agreement is set up as an inclusive, with inclusive criteria. And the way it's set up under 1.2 is it says all entities are eligible if they meet one of the settlement criteria. Now, BP's argument would have that as an exclusivity and say, if you don't meet part of one definition, namely, if you don't meet part of 1.2.3, the home ported part, you're out. So that it's essentially a single elimination or a mine field where if you hit something, you're out. That's the opposite of how it's set up. It's set up to be inclusive so that if you meet any one criterion, you're eligible. And indeed, the claims assist the claimant to achieve eligibility wherever possible and to process the claim to produce the greatest compensation. JUSTICE SCALIA. Let me ask you this. If we were to say that your vessels are qualified to make a claim, would that open the gate to let every cargo ship that transits the Gulf make a claim? MR. GOLDSMITH. Your Honor, that's certainly not our position. We're not claiming that. But, I mean, that sort of goes to common sense of what they meant when they required a vessel to be home ported. I mean, isn't that the logical reason they would require a vessel to be home ported in order to make a claim? Because, you know, who knows how many vessels transit the Gulf every day? MR. GOLDSMITH. Well, Your Honor, we don't think that that is the reasoning behind Section 1.2.3 and the home porting requirement, and here's why. Section 1.2.3 allows eligibility for any vessel that's home ported with no further questions asked. If you're a vessel and home ported, you're an eligible claimant. By contrast, there are further restrictions on the definitions of 1.2.1 and 1.2.2, namely a facility, which is a very broad definition or, I'm sorry, a very broad definition. 1.2.1 means, in the common parlance, a place where activities occur, such as business activities. But the activities are restricted so that a facility is only considered eligible if it sells products to end users or consumers in the Gulf Coast area. So that's a much narrower view of the type of facility that can be eligible. By contrast, a vessel. JUSTICE SOTOMAYOR. Would that include a container depot? MR. GOLDSMITH. I... JUSTICE SOTOMAYOR. From the Gulf. MR. GOLDSMITH. No. That would not meet the definition of facility because the ship is not selling products. So, no, it would not meet that definition by saying... JUSTICE SOTOMAYOR. Well, whatever's in the container is some sort of product. MR. GOLDSMITH. Indeed, Your Honor. However, the sale of the products is not being done by the ship. The ship is not selling those products, or the owner of the ship is not selling those products. So the facility is actually well narrowed to the sale of products, again, in the Gulf Coast areas. JUSTICE SOTOMAYOR. It seems to me, isn't a facility a location, one location, as opposed to a ship that's going all over the place? A facility. And a ship is floating around. So does a vessel meet the definition of a facility? MR. GOLDSMITH. Yes, it does, Your Honor, and if I may explain. First, the definition of facility is undefined. It's a small F term in 1.2.1, and the settlement agreement requires that defined terms use a capital F. Now, later in the agreement, there is a definition of capital F facility, and the capital F in Exhibit 5. The capital F facility is, for purposes of that definition, for a multifacility claim, that's the capital F definition that BP seizes on here to try to argue that a facility must be in a fixed location. So for, but for purpose. JUSTICE SCALIA. Exhibit 5 kind of imply that? MR. GOLDSMITH. We don't. JUSTICE SCALIA. Location? MR. GOLDSMITH. Well, we don't think so, Your Honor, and if I may explain. The reason for the definition in Exhibit 5 for a facility of a multifacility claim is to avoid a business from subdividing its business from one location to try to meet eligibility. For example, a car dealership that might sell both used cars and new cars, and perhaps they can meet the causation test that you're familiar with if they look at only one of their lines of business. For example, if their used car business met the definition but not the new car business, that used car, that car lot could not file a claim for one segment of its business as opposed to the other. It can only file it for its one location. If it has a separate and distinct location, another lot somewhere else, you could look at those independently. So there's nothing in the multifacility business that requires a single fixed location on land, as BP would argue. It's only to separate facilities. And indeed, our ships do meet that definition because each ship is a separate and distinct location from all the others, and it has separate P&Ls so that the claim filed for a single ship is a separate and distinct location. It's also a location because that's how passengers find their way to the ship. They get on the ship, and in that location and not any other. Now, in addition, and this is important, Your Honor, if the requirement for small F facility in 1.2.1 was read to mean a single point on land, a fixed location, and we don't think it is, that's only for the multifacility definition, that would in essence remove from Section 1.2.1 the term specified Gulf waters. And if I may make an illustration, I provided the panel with a couple of exhibits. It looks like something CSI would have printed. It's very nice and colorful. Thank you, Your Honor. It's right from the website. Exhibit 23 is the definition of, is the illustration of specified Gulf waters. Exhibit 22 is the map of Gulf Coast areas. Now, 1.2.1 and 1.2.2 both provide for eligibility for a facility or a service business doing the business in both the Gulf Coast areas or the specified Gulf waters. By contrast, very importantly, 1.2.3 and 1.2.4 restrict the geographic eligibility to only Gulf Coast areas so that if you read the facility definition to only be a fixed point, you would read out of the definition all of the blue in Exhibit 22. And indeed, that would expunge from this settlement all claimants from the entire geographic area that's probably two-thirds of the entire size out in the blue. So there could be no claimants who are facilities in the specified Gulf waters if you require that fixed point. Indeed, Royal Caribbean is a facility. It is a place of doing business, separate and distinct from any other place of doing business. And it does business not only in Gulf Coast areas when it's in port, but in the specified Gulf waters. So it absolutely meets the definition of facility requiring a single fixed point would read the term specified waters out of 1.2.1. And indeed, we would lose all of this blue from the settlement agreement. Let me ask you this. In a couple of cases, we've considered policy 467, which was promulgated by the administration of the claims administrator. Now, that would, that takes, they clearly say there that facility does not contemplate a vessel, does it not? It does, Your Honor. So why shouldn't we consider the interpretation of the agreement by the claimed administrator? For a couple of reasons, Your Honor. Number one, it's incorrect, and I'll come back to that. Number two, it's not an issue here because the appeals panel did not rely on 467 in both our briefs and BP's briefs. We've agreed that 467 is not relevant on appeal. However, it should be reversed as to the restriction on vessels, that vessels can only be considered under 1.2.3, and that's the same reasoning that is erroneous by the appeal panel. For no other reason than it would read out of the settlement agreement in 1.2.1 and 1.2.2, for that matter, any facility located in the Gulf Coast specified Gulf waters and any service business specified Gulf waters. So it's simply incorrect to narrow the, or to require the fixed point in land, which was the principal point that the claims administrator used in 467. So as applies to us, it should be reversed. And the other opinions that the Court has issued involving 467 were very different issues. The one, the Alabama radiologists, where some radiologists were outside of the Gulf Coast areas but had some activity in someone else's facility, somebody else's hospital facility within the Gulf areas, attempted to claim that as their own facility, and the claims administrator rejected it, and consistent with 467, that was an appropriate rejection. They did not properly own, lease, or operate the facility. Your Honor, this, as to the term facilities, this settlement agreement specifically refers to rest, yes. You ought to spend some time on service industry, too. Yes. You might run out of time. Yes, sir. Your Honor, certainly Royal Caribbean is a service business, and BP agrees in its brief that we operate a service business and that you can be a service business for both 1.2.2 and 1.2.1. We think that's critical because that shows that there's non-exclusivity. But BP undoubtedly offers services and a service business to its cruising consumers, and it does so with its a facility. If we read Section 1.2.3 to exclude service businesses, we would be reading the specified Gulf waters out. Undoubtedly, Royal Caribbean is a service business doing its business with full-time employees in the Gulf water. Your Honor, BP argues that our definition would read the home ported definition out. We believe that that's not true. It's an expanded definition. Home ported allows all vessels, regardless of their type of business, to be eligible without any further questions asked, so we think that's incorrect. Your Honor, BP also attempts to bring in the definition of facility from OPA. We think that's incorrect. The OPA facility is specifically only applied to facilities in the oil industry, and of course the oil industry is one of the excluded industries here, so we think that's incorrect. There are other examples that we offered where a facility can include a vessel, including the Americans with Disabilities Act, so that the ordinary parliaments in legal terms – I see I'm out of time – the ordinary parliaments in legal terms would often include a facility. When you're up for rebuttal, would you please let me know if your client loses this appeal, do you have another venue to recover? Yes, Your Honor. Or at least try to recover. Okay, thank you. Mr. Libo. Good morning, Your Honors. May it please the Court, Daryl Libo from Sullivan and have this Court believe that it is the victim of some grave injustice, that it had a well-grounded claim from the text of the settlement agreement, and that somehow BP and the settlement administrator conspired to deprive them of that claim, that the appeals panel's sitting en banc unanimously affirming the denial of Royal Caribbean's claim somehow inappropriately rewrote the settlement agreement, and that Judge Barbier's decision not to exercise his discretion to hear their appeal from the denial by the appeals panel was a gross abuse of discretion reviewable de novo by this Court. But Royal Caribbean is incorrect on all counts. Royal Caribbean, a cruise line controlled by a foreign corporation whose fleet flies under foreign flags, whose ships are all – and they can see this – home ported outside the Gulf of Mexico, merely seeks a windfall. A windfall based on a contorted reading of the settlement agreement that is plainly inconsistent with the language of the settlement agreement and basic canons of contract interpretation. And it is not surprising at all that the en banc appeals panel, all 13 or 14 of them sitting en banc, unanimously denied Royal Caribbean's claim. And Judge Barbier's decision not to hear the discretionary appeal, far from abuse of discretion, is merely consistent with this Court's admonition last year that Judge Barbier not hear – must avoid hearing appeals that present no pressing questions as to the settlement and interpretation of the agreement. Royal Caribbean's claim, which is sui generis, is completely a perfect example of an appeal that would not raise the type of pressing questions that this Court said Judge Barbier should hear. There is no split amongst the appeals panels, as I said before. And this Court in Holmes-Motor last year laid out criteria for what an appeal should be – what kinds of appeals should be looked at for abuse of discretion, and they gave two examples, whether there's a split of the appeals panels. There's not only no split here, there's unanimity by the appeals panel judges sitting en banc, or whether this was an issue that would come up repeatedly. Are you – I guess, isn't this a contract, an interpretation of a contract, and do we review it at de novo? Your – Judge Prado – Regardless of what a panel might have said or what – aren't we reviewing it de novo? I don't believe so, Your Honor. Judge Prado, Royal Caribbean cites a number of cases which cites the incontrovertible proposition that you can have a interpretation of a contract which raises a question of law, which then can be reviewed de novo. But this Court, even some of the cases they cite, this – from this Court, this Court gave context to what that means in the context of the settlement agreement. As far back as 2015, in an unreported opinion, which dealt with a very important question of whether an individual claimant can also be a – whether a Bell claimant, a business claimant, can also file an individual economic loss claim. This Court said this is exactly the type of cases we want to – we should be hearing. And Judge Barbier abuses discretion by not hearing because it would have broad spread – broad spread applicability to many, many claimants. And in that case, there was a split amongst the appeals panel. Neither issue was present here. And, in fact, this Court said in Holmes Motors any interpretation that turns the discretionary appeal of the district court into a mandatory appeal mechanism would frustrate the very purpose of the settlement agreement. And any claimant's claim, appeal, is going to involve some interpretation of the settlement agreement. So I don't believe that a de novo review is appropriate here. If ever there was a proper exercise by discretion not to hear an appeal, this was it. The settlement agreement is you – Kennedy, what is our standard of review in this case? Well, your standard review for a contract question can be de novo, but you've also said in the context of this – this settlement agreement, if there's no pressing question, if there's no important issue as to the settlement of the administration – of the agreement or a split amongst the appeals panels, you would turn the discretionary review of the judge into mandatory review, and that would not be proper. And I'm suggesting here that we can stop right there because there was no abuse of discretion. But I will address the merits of the argument – the argument as well. The – this – at one last point on the discretionary review and abuse of discretion. This is not a case where the issues raised by Royal Caribbean will have widespread applicability to the settlement agreement. Absolutely not. The settlement agreement has been in place, as you know all too well, for over 5 years. There have been 150,000 claimants, and no one until now, no one has raised the suggestion that a vessel can off – can be a facility, that there is some concept in the settlement agreement of floating facility. And it won't likely be raised by anyone else, because the only other cruise line that seems to be similarly situated was Carnival, and Carnival chose to file a lawsuit against BP under OPA, and that is exactly what – of course, it was available to Royal Caribbean, and they could have done the same thing. Ginsburg. Is that available now, or is it too late? I think it is too late, but I think that they're a sophisticated multinational corporation with a bevy of high-quality lawyers, and they had no reasonable basis to rely on the preliminary representations of a low-level person at the settlement facility and not file a claim. They could have done what a number of claimants have done, which is file a protective lawsuit and ask that the lawsuit be held in abeyance until their class eligibility was determined. They made a conscious decision. The record is replete with references to show that they were well aware of the opportunity and the option to file a separate lawsuit. And they skewed that strategy for whatever reason. Maybe it's because they thought if they could sneak into the settlement agreement, they wouldn't have to deal with causation issues that they'd have to under OPA. I don't know what the basis for that decision was, but they made a conscious decision. You – you – I think you agree in your brief that these categories of eligible entities is set up in the agreement disjunctively, so that it's certainly possible that you could have one entity fall into two or three, at least two of these categories. It is possible. But I think what – first of all, it's absolutely clear, contrary to what my respective counsel, counsel for Royal Caribbean said, that there is a definition specific to vessels. And when one steps, it says a distinct physical location. And a cruise ship does not have a distinct physical location. It floats. It's just a physical facility in the agreement. Right. If you go back to the – you step back for a second, Judge Davis, and look what the parties were trying to do, it becomes very clear. Whether there was an or or whatever conjunction they used doesn't really matter. If you step back and you look at it, section 1.1 was dealing with individual claims. The parties in section 1.2 said, how are we going to deal with class eligibility and class membership for economic entities? And they said, and it's very clear, they were hoping – they were addressing entities doing business and operating in the Gulf Coast. And in section 1.21, they said, let's set up a – let's – one of the four big categories, they said, of potential claimants under the settlement. They're in the Gulf of Mexico because it's very clear that the purpose of the settlement was to affect people that were injured in the Gulf of Mexico specified areas. So in 1.1, they said, let's look at people who are purveyors of goods, selling things. And it says very clearly they need to be at a facility selling goods in the Gulf of Mexico. Then they said, well, what do we do about people who provide services? And they said – Kennedy, in the physical – in the facilities, they also say in the specified Gulf water. Right. And I have two answers to that. First, the facility would definitely include marinas or docks or things like that that are actually on the water, don't have a land location, but they are in specified Gulf waters, and they have a fixed, distinct physical location. They don't move. They don't float. Those are in specified Gulf waters and be picked up. But not only that. If you look at section 1.21, it also contemplates that it would be – that facilities that – or facilities that purchased seafood in specified Gulf waters. And the settlement agreement deals with the fishermen. The notion of a broad specified Gulf waters area was not unique to facilities. And there's nothing to suggest, contrary to the pretty demonstrative that counsel handed up, that the area of specified Gulf waters was intended to create a notion of a floating facility somewhere in the Gulf of Mexico. And again, we're talking about facilities that the settlement administrator determined were only docked at a port in the specified Gulf waters – sorry, in the Gulf of Mexico – for less than 5 percent of its time, and in some instances, zero percent of the time. Even by their own account, by their argument in their brief, the ship that they had that was most in the Gulf of Mexico was only in the Gulf of Mexico, floating in and out of Gulf of Mexico waters, maybe less than 15 percent of its time. Kennedy. 1.2.2 does say at any time. Horwich. Well, 1.22, dealing with service businesses, does say at any time. But – and I believe that the use of 1.2 – of at any time in both 1.2.1 and 1.2.2 was to make the point that if you were a startup business or you went out of business sometime during the two-year period, you were still covered. You were not required, it says, any time during this two-year period. So the point was, if you were a new business during – and started up 10 months into the period, you still satisfied it. It didn't suggest at all that temporally you could be in the Gulf of Mexico for an hour, and you would be all of a sudden eligible to be part of the settlement class. Your example of the cargo ship is right on the point, Judge Davis. Counsel said, well, they don't sell products, so they would not be a facility, the cargo ship cruising through the Gulf of Mexico. But if you read the rest of 1.2.1, it says, or you sell products to another entity that also sells products to end users. So the cargo ship floating through the Gulf of Mexico, under the Royal Caribbean's definition, rejected unanimously by the Ombank appeals panel, would allow that cargo ship cruising through to also be a facility. Similarly, under 1.22, under the illogical extent of their argument, is that a bus who drives through Alabama for two hours, and the bus driver, who is a full-time employee of Greyhound, sells a soda, sells sodas for refreshments to the passengers, they would somehow be eligible as a class member under 1.22. There's no way to draw lines. And it's very clear that the settlement agreement, as I started to say, the settlement agreement did not contemplate floating facilities. Otherwise, you would have had to have some kind of ---- Kennedy, that after section 1.2, there's a long list of industries or companies that are excluded, and it had oil and gas industry, insurance entities, gaming entities, financial institutions, real estate development, and a whole list of people that are excluded, and it didn't say anything about cruise ships. Well, to me, that makes perfect sense. They were ---- they focused specifically on vessels. Vessels are included in the settlement agreement. And I was starting to get there. I was saying that the 1.21 deals with people who sell goods. 1.22 is intended to capture a large number of claimants who provide services on a full-time basis with their full-time employees in the Gulf. And when they got to vessels, because there could be hundreds, if not thousands of vessels in the Gulf of Mexico. There are vessels providing service to the oil business. There are vessels doing charter fishing for tourists. There are vessels who are doing, you know, sightseeing trips along the coast. There are many, many vessels. So they said, what is the proxy? What is the analog to being at a distinct physical location in the Gulf of Mexico for facilities? What would be the analog for vessels? And they came up with home porting. And home porting by definition ---- Let me ask you, was there any ---- there's no evidence in the record of any discussions that went on during the negotiations for the contract. No, no. I mean, I'm just looking at words on the page, and that's all I have to go by. And I don't have what they thought about when they were doing this. No, I'm just saying that the structure of the agreement makes clear that they were looking to address four categories of claimants. The fourth category would have been people who have real estate in the Gulf of Mexico. But it was always with a focus on in the Gulf of Mexico, and home porting was the bright-line test that the parties set up for determining whether a vessel was in the Gulf of Mexico. They could have said other things. They could have said a vessel that was 50 percent of its time or more in the Gulf of Mexico. They could have said a vessel that was 25 percent of its time. They said home porting. And the point is, although Mr. Hill's argument that the section 1.2 was expansive and that our interpretation, you know, reads out certain parts of the agreement, it is Royal Caribbean that would urge this Court to make section 1.23 totally superfluous, and let me explain why. Section 1.2 is about commercial entities, right? And you have vessels being home ported. So it is hard to conceive of what you'd pick up in 1.23 that wouldn't already be picked up in 1.21 or 1.22 if they were correct. And vessels, the provision on vessels is not the sole way for vessels. These are, by definition, commercial boats, because this is the entity section, not the individual. This is for commercial entities. Every boat that's home ported means they're operating by definition, because that's what the definition of home ported is, what the registration says when the government issues the registration. Government-issued registrations in the Gulf of Mexico, any of those States, say you need to be operating in the Gulf of Mexico waters, which made sense why it was a good proxy for being in the Gulf. Kennedy, we can imagine any number of businesses that would fall under more than one of these categories. But you can't imagine a lot of businesses that would fall into 1.2. The idea that it's not so – 1.23 becomes superfluous if you take their reading of the definition, because any boat operating in the Gulf of Mexico that's home ported, any vessel, right, would have either, by their definition, a facility because it sells something for any point of time it's in the Gulf, or it would be a service business because it spends an hour or two with one full-time employee in the Gulf, particularly because all you need is to have the owner-operator be there. So if someone owns a ship and, you know, they decide that they don't want to hire any employees, not to pay them, you know, benefits or whatever, that would also be under 1.22. So what would you pick up – what could you conceivably pick up under 1.23 that wasn't already picked up under 1.21 and 1.22 if their definition is right? I scratched my head for a long time trying to figure out what would be the purpose of 1.23, and it finally dawned on me. There could be someone sitting in Indiana or Kansas who owns a boat in the Gulf of Mexico that is engaged in selling services or providing services or selling So it is inconceivable to me, Judge Davis, that the parties would have incorporated as a separate important part of the eligibility classes something that might have affected two or three people. And to read the settlement agreement to put a square peg in a round hole, as Royal Caribbean attempts to do, makes Section 1.23 completely superfluous, except for this handful of people that you could contort hypothetical that might be picked up. So it is not expansive. 1.23 is not expansive. It is blatant from the structural – it is manifest from the structure of the agreement that it was intended to be, as the appeals panel found unanimously, unanimously, all 13 of them, that the 1.23 was supposed to be the sole avenue for membership in the class for vessels. And Royal Caribbean just does not fit the definition set up in the settlement. Kennedy. It would be a lot clearer if those three categories weren't set up disjunctively so that – Well, I mean, Royal Caribbean in their briefs focuses on the word or, and I'm saying I don't think it matters what conjunction they use. They couldn't use and because then nobody would be a class member because they wouldn't be able to satisfy all four of the categories, so they put the word or in. But all I think, all is clear is they're saying when you use maxims, you know, canons of contractual interpretation that, you know, you satisfy one of these four and you can't – and you're a class member. You know, you didn't sign a case for the proposition that that is a rule of contractual interpretation. I mean, I know it is for statutes, and it may be common sense, but I didn't see a case that set up that rule. I believe it's in our brief, Your Honor. I can't – off the top of my head, I can't cite you to one. But I think that it's just so clear also that on the merits, a ship that cruises in and out of the Gulf of Mexico for a small amount of time or a container ship, whether it be a container ship, whether it be a cruise ship, or whether it be a tour bus operator on land, is not a distinct and specific physical location, which is what the settlement agreement defines. You don't even have to get to 467. The settlement agreement itself defines it as a distinct physical location. It's inconceivable to me that you are at a distinct physical location if you were cruising around and you're in Florida and one – Florida water is at one moment and Louisiana water is at another moment. How is that a distinct physical location? And the notion … Kennedy, it doesn't say distinct now. I don't find it. I believe it says a specific physical location. I have anyway. Yeah. So I believe it was just never contemplated you'd have floating facilities. And I think the point is also illustrated quickly by the fact that had the parties contemplated such a thing, they would have had to have done something in Exhibit V to figure out how you would compensate those floating facilities, what zones they would be. There's no such thing. They do something similar for multifacility locations, because they did contemplate that a claimant could have some facilities outside the Gulf, some facilities inside the Gulf, and we need to have a mechanism to decide what's a proper part of their claim. They would have had to do the same thing. Their definition is completely unmanageable. Sometimes, Your Honors, a boat is just a boat and a ship is just a ship. And that's what these are. These are cruise lines, ships that are not home ported in the Gulf of Mexico, flying at a foreign flag. They came into the Gulf of Mexico at a de minimis amount of time, and they're seeking a windfall. Thank you, Your Honor. All right, Mr. Hill. Thank you. First, to answer your question, Judge Clement, no, we do not have another place to get relief. And, in fact, that's why we relied on the Claims Administration. Before this claim was filed, we gave them all the details of our claim. We said we are a cruise ship. We are not home ported, but we bring passengers in and out of the ports. We appear to be a facility under the definition of 1.2.1 and a service business under 1.2.2. Are we eligible? We were told unequivocally, not by some low-level person, but by someone who carried the title Claims Liaison. She was assigned to our cases to help us, as 4.3.7 says, file our claim. So she was not some low-level person. And that was confirmed later over a period of time, including by a lawyer we cited in our briefs, a lawyer for the Claims Administrator. So it was not some low-level person. And we did rely on that. And that's why we filed in this. Would you comment on counsel's example where he says that Section 1.2.3 would be a vessel under one of the other sections? It's not, Your Honor. And here's why. You don't even look at the other sections for a home-ported vessel. You don't even ask the question. Now, we gave the example of a tugboat for if a tugboat is home ported. Certainly, it's not a facility because it doesn't sell products. But it's eligible. You don't have to ask any further questions. You don't have to ask if it has full-time employees. It may or may not. Many, many businesses run with part-time employees, especially in this day and age when employment is shrinking. So there are plenty of vessels that could be eligible. A charter boat business owned by an individual who doesn't work at full time. If he just rents the boats out, it doesn't sell products. It doesn't have full-time employees. But if he's got those boats home ported, you don't have to look at 1.2.1 and 1.2.3. You're in. The problem is, the biggest problem is the other way. And he did not give you an adequate explanation as to why include the specified Gulf waters. He is simply incorrect when he says that that includes the docks and marinas. Because those docks and marinas are within the definition of Exhibit 22, the Gulf Coast areas. There are docks and marinas, but they are in the inland waterways defined here. You've got to give meaning to specified Gulf waters, which is the big blue area out here. And Judge Davis, you're absolutely correct that all we have here are the words. This is not an issue of, you know, the intent or ambiguity. The interpretation of the contract is a matter of law. We also believe that the standard of review is correctly, in essence, de novo. And I would cite a recent case that a panel that Judge Prado, you were on from claimant ID 1 and 0s 1528 versus BP decided on April 27th, 2017. From 2017, Westlaw 1540883 that says, when you're construing the settlement agreement, it's a question of de novo review, it's interpretation of the settlement. We think that's elementary. Clearly, we meet the definition of service business. However, we are also a facility. We meet that definition of selling the products. So we don't want to lose sight of the fact that we do meet both definitions. The Carnival case, we don't know what Carnival did. We saw that there was a lawsuit filed, but that was a year before the settlement agreement. We don't know if they filed here. We don't know if anyone else filed here. This is a confidential process. BP may know, but we don't know because we don't have access to who all filed. So we don't know if ultimately Carnival did anything else. We do know they filed a lawsuit, but it was a year before the settlement. On the issue of time, we are not the cargo vessel that just passed through. We came to ports. And indeed, the Majesty of the Seas was in port during the relevant times during the compensation period, more than 1,000 times at Key West. So we are not just this de minimis cargo ship. And that's not our case. We're not arguing that case. We're also not arguing the Greyhound bus. We're arguing for ships that sold products in the specified Gulf waters and Gulf Coast areas. They undoubtedly operated facilities in the appropriate areas. And we were not here a de minimis amount of time. We were here thousands of times. What were the ports that were the ships went? Key West, Tampa, New Orleans, Galveston. A container ship that comes in with containers going to, you know, various wholesalers would come under the definition, wouldn't it? I know, Your Honor, because the ship, if I may, the ship is not selling the products. It, the, someone on the other side who owned the cargo is selling it to the end user. So that's someone else. The shipper is not a facility. For all the foregoing reasons, we respectfully request a reversal and a remission. Thank you. All right. Thank you. We have your arguments. This concludes our docket.